## THE ROCKAWAY.
## THE RICHARD F. YOUNG.

### (District Court, E. D. Virginia. February 16, 1917.)

COLLISION ⊜102—STEAM VESSELS IN HARBOR—NEGLIGENT NAVIGATION—
MUTUAL FAULTS.

   A ferryboat, passing out of her slip in Norfolk harbor, and a tug, which
had just passed the end of the slip, but backed to avoid a crossing vessel,
and came into collision with the ferryboat, both *held* in fault and liable
for injury to a passenger on the ferryboat; the tug being in fault for not
keeping a proper lookout and failing to give a backing signal, and the fer-
ryboat for failure to exercise proper care in observing the movements of
other vessels, including those of the tug, in time to have avoided the col-
lision.

   In Admiralty. Suit by Bannie Barnes against the Ferries Company,
owner of the ferryboat Rockaway, and the steam tug Richard F.
Young. Decree for libelant against both respondents.

   D. Lawrence Groner, of Norfolk, Va., for libelant.
   Hicks, Morris, Garnett & Tunstall, of Norfolk, Va., for Ferries Co.
   Hughes & Vandeventer, of Norfolk, Va., for The Richard F. Young.

   WADDILL, District Judge. The libelant, a passenger on the Rock-
away, a ferry steamer plying between the cities of Norfolk and Ports-
mouth, Va., on the 21st of March, 1916, paid her fare, and took pas-
sage at Norfolk, for Portsmouth, taking a seat in the forward end of
the cabin, a short distance abaft the stem of the ship. As the Rocka-
way left her slip, and had passed some 50 feet in the stream, she came
in collision with the steam tug Richard F. Young, which was apparent-
ly in backing motion at the time. The side of the ferryboat was crush-
ed in, and the libelant seriously hurt, and for the damage sustained by
her she filed her libel against both vessels jointly.

   The right of the libelant to recover is undisputed, she sustained
the injury without any fault on her part, and as a result of a collision
between the steamer, on which she was a passenger, and the tug, which
by the exercise of proper care and caution on the part of the respec-
tive vessels should have been averted. In any event, the collision can-
not be said to have been inevitable, such as would disentitle the libelant
to recover.

   The most difficult question for determination is whether the loss
should rest solely upon one or upon both vessels, and the conclusion of
the court, taking into account all the facts in the case and the peculiar
circumstances under which the collision occurred, is that both vessels
were in fault, and therefore the damages should be divided between
them. The collision occurred in broad daylight, in good weather,
with nothing to obstruct the view of the Rockaway's master from his
pilot house, and ought to have been averted, had either vessel been
exercising the degree of care imposed upon it, navigating in a crowded
harbor. It is true that the master of the Rockaway, shortly before the
collision, observed the Young pass across the end of his slip, headed
down stream, and he supposed that his course was clear. He thereupon

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

looked upstream, and, observing nothing there, or ahead in his course, rang his vessel ahead, and paid no further attention to the Young. At virtually this moment, however, it seems that a naval launch was in the act of crossing the bow of the Young from inshore, and another launch was coming a short distance out from the opposite direction, heading for the naval slip, which adjoined the ferry slip, also crossing her course. In this condition, the tug immediately reversed, and put its engines full speed astern. This maneuver of the tug was proper in this emergency, though it is not clear whether it gave proper reversing signals or not; and while the vessel was moving backwards she came into contact with the ferryboat as above indicated.

. The court's conclusion is that the tug was in fault in failing to have a proper lookout, and in not giving signals indicating she would go astern, and that the ferryboat was in fault in that she failed to exercise the degree of care and caution required of her in observing conditions down as well as up the river, after the tug had passed down the river as above indicated. Had she done this, she might have delayed making her departure from the slip at all, or have taken earlier precautions to check her course upon discovering the embarrassments to the tug's navigation.

The failure of the tug to give backing signals, under the circumstances, should not excuse the ferryboat from fault, since it is admitted that the ferryboat observed the tug backing, and should and would have observed the embarrassments incident to its navigation earlier, and probably in time to have averted the accident, had she exercised the degree of care and caution required under the circumstances.

The usual difficulty arises in fixing the amount of damages in this case; but the court thinks, taking into account the age of the libelant, the suffering she endured, and the probable duration of the injury which she sustained, together with the loss to her business, which she is unable to attend to, that an allowance of $1,700 should be made, with costs; and a decree will be entered to that effect when presented.